**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| SOUTH CAROLINA REPUBLICAN PARTY, *et al.,* | CA No. 6:10-1407-JMC |
| Plaintiffs, | |
| vs. | |
| STATE OF SOUTH CAROLINA, *et al.,* | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE AS
DEFENDANTS-INTERVENORS**

<u>INTRODUCTION</u>

This memorandum of law is submitted in support of a motion to intervene as defendants-intervenors in this litigation.[1]  The proposed intervenors are:

(A)      Wayne Griffin and Reginald Griffin of Greer, SC, Brett Bursey of Lexington, SC, and Alan Olson, Columbia, SC. These voters consider themselves to be independents and do not wish to enroll in a major party as a condition of voting in a primary election for nomination for public office.

(B)      The South Carolina Independence Party, the South Carolina Constitution Party, the Progressive Network Education Fund, Inc., the Columbia Tea party, Inc., and the Committee for a Unified Independent Party, Inc. (d/b/a IndependentVoting.org).

(C)      The following members of the Black Legislative Caucus of the South Carolina House of Representatives: Terry Alexander (District 59), Karl B.Allen (District 25), Jerry N.Govan, Jr. (District 95), Chris Hart (District 73), Leon Howard (District 76), Joseph Jefferson,

---

[1] Statements of interest by several proposed intervenors are annexed as Exhibit A to the declaration of Wayne Griffin.

Jr. (District 102), John Richard C. King (District 49), David J.Mack, III (District 109), Harold

Mitchell, Jr. (District 31), Joseph Neal (District 44),  Anne Parks (District 12), Ronnie Sabb

(District 101), and Robert Williams (District 62).

## INTERVENTION SHOULD BE GRANTED

1.     It should be granted as of right.  The standard is set forth in F.R.C.P. Rule 24(a)

which requires the court to grant intervention to anyone who, *inter alia*:

> **(2)** claims an interest relating to the property or transaction that is the subject of
> the action, and is so situated that disposing of the action may as a practical matter
> impair or impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

The individuals who consider themselves independents meet this test.  South Carolina

independent voters, or organizations representing such voters, surely have an interest in the

transaction that is the subject of this action.  The action is, after all, about the terms and

conditions under which persons can vote in a primary election.  Currently independent voters are

permitted to do so.  If the plaintiffs are successful, such voters may be deprived of that right

unless they register into a political party, which they do not desire to do.  In that respect,

disposing of the action will impair the ability of these proposed defendants-intervenors to protect

their interest.

The members of the South Carolina Black Legislative Caucus have articulated a

significant interest in the outcome of this litigation for themselves and the communities they

have been elected to serve. Representative Joseph Neal states that closing the primaries and

requiring registration by party will result in segregation of the political parties and a lessening of

the public's ability to influence the political process.

As for the last criteria, "unless existing parties adequately represent that interest," the

proposed defendants-intervenors submit that they do not.  Plaintiffs, of course, seek to limit their

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE AS DEFENDANTS-INTERVENORS - 2

voting rights.  The Attorney General of the State of South Carolina will, no doubt, effectively articulate the interests of the State in the current system of non-partisan registration and open primaries.  However, he cannot reasonably be expected to articulate the particular interest that independents and their allies have in the litigation.  The interest of the State of South Carolina is not the same as the interests of independent voters, although in the instant litigation both seek to deny plaintiffs the relief they seek.  It is the job of the Secretary of State (and his representative, the Attorney General) to uphold the laws of South Carolina against constitutional challenge.  In so doing, they are required to articulate the interest of the state in the legislation being defended. *See, e.g.  Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1195 (2008).

For the proposed defendents-intervenors the question is more immediate. For the non-aligned voters represented by IndependentVoting.org, the outcome of this litigation will determine whether or not they can continue to fully participate in the electoral process without declaring themselves to be something that they are not, that is, a Republican or a Democrat. For adherents of minor parties, the situation is similar. Under the current system they are permitted to vote in major party primaries where the candidates most likely to win are nominated. Under a system of partisan registration and closed primaries, they would not. Under the current system all voters can participate in all phases of the electoral process. They are not segregated by having to declare a party affiliation when they register to vote.

Proposed defendants-interveners Representative Joseph Neal and Wayne Griffin speak as well of the concern that, if this lawsuit succeeds, it will further racial polarization in South Carolina as whites will increasingly gravitate to the Republican Party, while the Democratic Party will become predominantly African American.  Brett Allen Bursey, the Executive Director

of the South Carolina Progressive Network Education Fund, speaks of how a closed primary, combined with gerrymandered "safe seats," would exclude many voters from participating in the election that counts, the primary of the dominant party. Ted Adams, the Chair of the South Carolina Constitution Party, expresses the same concern and notes, as well, that the "two party monopoly" excludes citizens from "control of their government" and has failed in many areas voters care greatly about such as education and improving the quality of life. The Columbia Tea Party takes note of the fact that under a closed primary system, a different group of voters is voting in the general election than in the primaries, resulting in further frustration of voters already frustrated with the two party system.

Admittedly, the application to intervene by the proposed organizational itnervenors fits less comfortably into the statutory matrix.  However, it is important to bear in mind that these organizations speak for the interests of independents and their allies in South Carolina and nationally.  This litigation impacts directly on all independent voters in South Carolina and indirectly on independents across the country.  This case is one of a number of efforts by the major parties to restrict participation in their primaries.  *See*, *California Democratic Party v. Jones*, 530 U.S. 567 (2000); *Mississippi Democratic Party v. Barbour*, WL 2190855 (5th Cir. 2008); *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007).  The statewide and national perspective these proposed intervenors bring to this litigation will ensure that the interests of independents are presented in the clearest and broadest possible manner.  Further, given that independents are not members of a party, it would be unfair to allow the Republican Party to represent the interest of Republicans in this litigation, but deny independents organizational representation.

There is precedent for allowing such organizations to intervene.  In *Johnson v. Mortham*, 915 F.Supp. 1529, 1538-39 (N.D.Fla., 1995), a reapportionment case, the NAACP was allowed

to intervene under Rule 24(b) governing permissive intervention because it represented the interests of voters in the district in question.  Intervention as of right was denied because, while the NAACP had a "protectable legal interest in the litigation," it had not demonstrated that existing representation of that interest was inadequate.  The proposed defendants-intervenors in the case at bar have done so as set forth above.

In *Johnson*, of course, the affected voters (those residing in the relevant district) were allowed to intervene as of right.  915 F. Supp. at 1536.  This is in accord with *Georgia v. Ashcroft*, 539 U.S. 461, 476 (2003) and *Carter v. Dies,* 321 F. Supp. 1358, 1360 (D.C. Texas 1970), *aff'd without reference to intervention issue, Bullock v. Carter,* 405 U.S. 134 (1972).  In *Georgia v. Ashcroft* the intervenors were voters affected by a redistricting plan, and, in *Carter v. Dies*, they were voters who wanted to vote for a particular candidate who was suing to overturn a ballot access restriction.

Finally, the Court should be aware that the Republican Party of Idaho has brought similar litigation. *The Idaho Republican Party, Et Al. V. Ben Ysursa, in his Official Capacity as Secretary of State of the State of Idaho*, Case No. 1:08-cv-00165-BLW. The case has gone to trial and is awaiting decision by U.S.D.J.  B. Lynn Winmill. On August 20, 2008 (Docket entry 20), a motion to intervene by Committee for a Unified Independent Party, Inc. (d/b/a IndependentVoting.org), and others was granted

2. <u>Alternatively, permissive intervention should be granted.</u>  Intervention may be permitted, under F.R.C.P. Rule 24(b)(1), to anyone who, *inter alia:*

> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

As the proposed answer submitted herewith makes clear, the claims and defenses asserted by the proposed defendants-intervenors grow directly out of the factual underpinnings of the main action: the existing non-partisan registration/open primary system in South Carolina and the actions taken by the South Carolina Republican Party to challenge it. There are as well, common questions of law, namely, what deference the State of South Carolina and, ultimately, this Court has to give to the assertion by the Republican Party that its constitutional rights demand a change in the South Carolina system.

Of significance in considering the question of intervention by both the individual voters and the organizations, is the new, but growing, phenomena, of significant numbers of Americans self-identifying as independents, 40 percent of voters and the pivotal role they played in the recent presidential primaries. (See declaration of Jacqueline Salit, paras. 9-12, submitted herewith.) Since this lawsuit directly intersects these voters and their participation in the primary process, it is important that the Court have available to it the most developed points of view on questions concerning independents, their interest, and their role in the political process. It is respectfully submitted that the proposed defendants-intervenors are in a position to provide this.

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO INTERVENE AS DEFENDANTS-INTERVENORS - 6

CONCLUSION

For the aforesaid reasons it is respectfully submitted that the motion to intervene as

defendants-intervenors should be granted.

DATED this 7th day of February, 2011

> Harry Kresky
> Law Office of Harry Kresky
> 250 W. 57[th] Street, Ste. 2017
> New York, NY  10107
> Telephone:  212-581-1516
> Facsimile:  212-581-1352
> Email: hkresky@harrykreskylaw.com
>
> /s/ Fletcher N. Smith
> Fletcher N. Smith & Assoc.
> 112 Wakefield Street
> Greenville, SC 29601
> Telephone: (864) 232-6541
> Facsimile:  864-232-6756
> Email: Fletcher@piedmontlegal.com
>
> Attorneys for Proposed Defendants-Intervenors