**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| The Greenville County Republican Party Executive Committee, The South Carolina Republican Party, Patrick B. Haddon, in his official capacity as the Chairman of the Greenville County Republican Party, and William "Billy" Mitchell, | ) ) ) ) ) ) ) | C.A. No. 6:10-cv-01407-JMC |
| Plaintiffs, | ) ) | **OPINION AND ORDER** |
| v. | ) ) | |
| The State of South Carolina and John H. Hudgens, III, in his official capacity as the Chairman of the South Carolina State Election Commission, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

    This case involves a challenge to multiple election laws of the State of South Carolina brought by The Greenville County Republican Party Executive Committee, The South Carolina Republican Party, Patrick B. Haddon, in his official capacity as the Chairman of the Greenville County Republican Party, and William "Billy" Mitchell ("Plaintiffs") against The State of South Carolina and John H. Hudgens, III, in his official capacity as the Chairman of the South Carolina State Election Commission ("Defendants"). Plaintiffs contend that the open primary system and other laws placing restrictions on the candidate nomination process are unconstitutional because they allegedly violate Plaintiffs' right to freedom of association and equal protection as guaranteed by the First and Fourteenth Amendments of the Constitution. Currently before the court are Plaintiffs'

Motion for Summary Judgment [Doc. 28], Defendant State of South Carolina's Motion to Dismiss [Doc. 29], and Defendants' Motion for Summary Judgment [Doc. 30].

## FACTUAL AND PROCEDURAL BACKGROUND

South Carolina law currently provides for an open primary election system as the general method of nominating political party candidates for inclusion on the general election ballot. Under the law, any qualified elector is allowed to vote in the party primary of his or her choice; provided, however, that the elector may vote in only one party primary during any single election cycle. *See* S.C. Code. Ann. §§ 7-11-10, -9-20, -13-1010 (2010). Primaries in South Carolina are conducted as open primaries regardless of whether the primary is conducted by the State Election Commission, County Election Commission, or the political parties.

Political parties may elect not to participate in the primary process and instead nominate its candidates for the general election by convention. *See* S.C. Code. Ann. § 7-11-10. However, to nominate candidates by convention, three-fourths of the total membership of the party's state convention must vote to use the nomination method. *See* S.C. Code Ann. § 7-11-30. Under State election law, candidates may also be placed on the general election ballot by petition. *See* S.C. Code. Ann. § 7-11-10. Although the petition method of nomination is not typically used by organized political parties, South Carolina law does not expressly prohibit political parties from using petitions to place the candidate of the party's choice on the general election ballot.

On June 1, 2010, Plaintiffs filed this action against Defendants alleging violations of the Plaintiffs' First and Fourteenth Amendment rights of free association and the equal protection of the laws as guaranteed in the United States Constitution. Plaintiffs allege that South Carolina's open primary nomination method is unconstitutional and that South Carolina law provides no viable

2

alternative method of nominating candidates due to additionally unreasonable and unconstitutional statutory restraints on the regulation of the party's internal processes which prevent the parties from exercising other nomination options.   Plaintiffs seek permanent injunctive relief from the enforcement of S.C. Code Ann. § 7-5-340 (Duties of State Election Commission respecting removal of elector from official list), § 7-5-420 (Lists of voters for party primaries), § 7-5-610 (Who is entitled to vote in municipal elections), § 7-5-630 (Municipal registration or enrollment shall not be required), § 7-9-20 (Qualifications for party membership and voting in primary election), § 7-11-20 (Conduct of party conventions or party primary elections generally; presidential preference primaries), § 7-11-30 (Convention nomination of candidates), § 7-13-15 (Primaries to be conducted by State Election Commission and county election commissions on second Tuesday in June), and § 7-15-320 (Persons qualified to vote by absentee ballot).[1]    In addition to their requests for injunctive relief, Plaintiffs' Complaint also requests a declaratory judgment regarding the constitutionality of the statutes, both on their face and as applied.[2]

Defendants answered the Complaint on July 19, 2010, generally denying Plaintiffs' entitlement to the requested relief.  Defendants further asserted that the action was barred, as against

---

[1]Plaintiffs list section 7-15-395 of the South Carolina Code (Responsibilities of political parties; expenses) as a challenged statute in the Complaint, but state in their memorandum in support of summary judgment that they do not challenge the statute. [Doc. 28-1, at 15]. Further, Plaintiffs argue the unconstitutionality of sections § 7-9-20, 7-5-630, and 7-5-340 of the South Carolina Code in their memoranda, but these matters were not contained in the Complaint.  Defendants did not raise any objection to Plaintiffs' challenge to these additional statutes.

[2]Plaintiffs further requested injunctive relief and a declaratory judgment concerning section 7-9-40 of the South Carolina Code (Party club membership and activities; membership lists; one voting place per club; absentee voting) (repealed).  However, one day after Plaintiffs filed the Complaint, the South Carolina General Assembly repealed section 7-9-40, along with several other election laws related to political party organization. *See* 2010 S.C. Act No. 245, § 6, eff. June 2, 2010.

the State, by the doctrine of sovereign immunity.  The parties agreed on an abbreviated scheduling order for this matter and did not engage in any discovery.   On February 10, 2011, the parties filed cross-motions for summary judgment only as to Plaintiffs' facial constitutional challenge to the election statutes.  Defendant State of South Carolina contemporaneously filed a motion seeking dismissal as a defendant in this action based on sovereign immunity.[3]  A disparate group of individuals and organizations, including but not limited to individual voters self-categorized as independents, the South Carolina Independence Party,  the South Carolina Constitution Party, the Progressive Network Education Fund, Inc., the Columbia Tea Party, Inc., the Committee for a Unified Independent Party, Inc. (d/b/a IndependentVoting.org), and members of the Black Legislative Caucus of the South Carolina House of Representatives (collectively, "Intervenors") submitted a single motion to intervene in the action which the court granted shortly before holding a hearing on the pending motions.  The court heard oral arguments on the motions on March 10, 2011.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To prevail on a motion for summary judgment, the movant must demonstrate that: (1)

---

[3]During the hearing on the motions, Defendant State of South Carolina requested that the court postpone any ruling on its Motion to Dismiss [Doc. 29] to allow it to participate in the proceedings on the Motions for Summary Judgment.  The State made the request without waiving and expressly reserving the right to assert sovereign immunity.  Plaintiffs did not object to the State's request.  Accordingly, the court dismisses Defendant State of South Carolina's Motion to Dismiss without prejudice.

4

there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

Plaintiffs assert that South Carolina's primary election statutes are unconstitutional on their face. In their summary judgment motion, they ask the court to enter a declaration of unconstitutionality and to enjoin Defendants from enforcing the statutes.[4]

---

[4]Plaintiffs raise both a facial and as applied challenge to the South Carolina election statutes in their Complaint. However, the summary judgment motions currently pending before this court

To prevail on a facial attack on a statute, a plaintiff must demonstrate that there are no set of circumstances under which the law could be validly applied. *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988). "[A] facial challenge must fail where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal citations omitted). Courts have also recognized an additional type of facial challenge which allows a finding of unconstitutionality in the First Amendment context where the challenged law is so broad that there is a realistic possibility that the law may inhibit the First Amendment rights of parties not before the court. *See New York State Club Ass'n, Inc.*, 487 U.S. at 11.

"In determining whether a law is facially invalid, [the court] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 450 (internal citations omitted). Facial challenges are generally disfavored because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451 (internal citations omitted). Therefore, courts often exercise judicial restraint to avoid premature interpretation of laws based on insufficient facial records and to refrain from frustrating the intent of the legislature. *Id.* at 450–51 (internal citations omitted). States are given broad powers to regulate the time, place, and manner of holding elections. *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). "[C]onstitutional law[] compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial

---

only address Plaintiffs' claims concerning the facial validity of the statutes. During the hearing on the motions, Plaintiffs' counsel agreed that they so limit their motion. Therefore, the court does not address the propriety or merits of any as applied constitutional arguments in this order.

regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). However, the states' regulatory powers are limited such that they may not be exercised in a way which violates the Constitution. *Wash. State Grange*, 552 U.S. at 451.

It is unavoidable that election laws will impose some burden upon individual voters [and political organizations]. *Burdick*, 504 U.S. at 433. However, "the mere fact that a State's system 'creates barriers . . . does not of itself compel close scrutiny.'" *Id*. (internal citations omitted). Instead, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id*. at 434; *see also Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989). If the court finds that the election regulations impose a severe burden on associational rights, they are subject to strict scrutiny and the court will uphold them only if they are "narrowly tailored to serve a compelling state interest." *Wash. State Grange*, 552 U.S. at 451–52 (internal citations omitted). "If a statute imposes only modest burdens, however, then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions on election procedures." *Id*. at 452 (internal citations omitted).

Plaintiffs present the court with constitutional challenges to multiple State election statutes related to South Carolina's candidate nomination process. Specifically, Plaintiffs challenge the constitutionality of South Carolina's open primary method of nomination generally and seek a declaration from the court as to the meaning and constitutionality of two specific statutes, sections

7-9-20 and 7-11-20 of the South Carolina Code. Plaintiffs also raise a constitutional challenge to the State's convention method of nomination and allege that the method is not a viable alternative to the open primary system. Finally, Plaintiffs argue that the nomination methods and several individual election statutes violate the Equal Protection Clause of the Constitution. The court will address each of Plaintiffs' arguments in turn.[5]

## I.      Nomination by Open Primary

Plaintiffs challenge the facial validity of South Carolina's open primary nomination method. Essentially, Plaintiffs' argument is that the totality of various State laws impose a substantial burden on the associational rights of political parties by denying them the option of holding closed primary elections. To advance their argument, Plaintiffs also claim that the Code section 7-11-20 already authorizes political parties to conduct closed primaries, but that other election statutes prevent the exercise of that authority. Additionally, Plaintiffs argue that Code section 7-9-20, governing the qualifications for party membership and voting in primary elections, is unconstitutional because it violates political parties' right to freedom of association by regulating internal party processes.

The requirement that primary elections be open in South Carolina is not contained in any one statutory provision, but is effectuated through the enforcement of multiple statutes including, in part, sections 7-5-340, 7-5-420, 7-5-610, 7-5-630, 7-9-20, 7-11-30, 7-13-15, and 7-15-320 of the South Carolina Code. In an open primary, a registered voter may request, on election day, the ballot for any party's primary in which the voter intends to vote whether or not the voter previously has

---

[5]Defendants' Motion for Summary Judgment generally seeks a broad declaration that the State statutes challenged by Plaintiffs are constitutional on their face. Therefore, for convenience and clarity, the court's order is predominantly organized based on Plaintiffs' particular arguments as to each challenged nomination method and statute.

registered as a member of that party; however, the voter may only vote in one party's primary election. Here, Plaintiffs desire to operate their party primaries as closed primaries allowing only members of their political party to vote in the party's primary. In support of their position, Plaintiffs contend that the State places restrictions on political parties' ability to opt-out of the primary method adopted by the State and, therefore, the open primary nomination method afforded under State law is mandatory and unconstitutional.

"[T]he freedom to join together in furtherance of common political beliefs" is clearly protected by the First Amendment of the Constitution. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (citing *Tashijan*, 479 U.S. at 214-15). Encompassed within the right to freedom of association is the power of an organization to identify the people who constitute the organization, as well as the right to limit the organization to people who share in the common interest and purpose of the organization. *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122. A corollary of the right to associate is the right not to associate. *Jones*, 530 U.S. at 474. Political parties' associational rights are of paramount importance in the process of selecting its candidates for elective office. Indeed, it is the nomination process that "often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Jones*, 530 U.S. at 575. Accordingly, courts are careful to observe the protections afforded by the First Amendment to political parties in choosing their standard bearers. *Id.*

With the understanding of the importance that the freedom of association plays in the affairs of political parties, courts have repeatedly rejected attempts to facially attack state election statutes

on the basis of forced association where state law provides legitimate alternatives that do not restrict freedom of association. *See Jones,* 530 U.S. at 577; *Miller v. Brown*, 503 F.3d 360 (4th Cir. 2007). However, Plaintiffs would have this court squarely contradict precedent to find facial unconstitutionality in the statutes challenged today.

The United States Court of Appeals for the Fourth Circuit acknowledged the facial validity of a state election statute involving alternative methods of candidate selection in *Miller v. Brown. Miller*, 503 F.3d at 367 (noting that Virginia's open primary law did not facially burden political parties' associational rights). In *Miller*, the court reviewed the constitutionality of Virginia's primary election statutes. Under the Virginia laws at issue in *Miller*, several methods of candidate nomination were available including the options of a primary, party convention, caucus, and "firehouse primary." *Id*. at 362. Additionally, under the law, an incumbent state legislator had the right to determine the method of nomination for his or her seat. In 2004, the Republican Party of Virginia adopted rules which excluded all voters not officially affiliated with the party from participating in party primaries. Shortly thereafter, a Republican legislator attempted to designate the primary as the method for the nomination of his seat applying the new rules adopted by the Republican Party of Virginia. The Virginia State Board of Elections objected to the legislator's designation as violative of Virginia's open primary laws. *Id.* at 363. The Republican Party of Virginia brought suit against the Board of Elections and sought a declaration that Virginia's open primary law was unconstitutional on its face and as applied.

In addressing the facial challenge to the statute, the court declined to hold that Virginia's use of the open primary was unconstitutional. Instead the court found that "when properly viewed in the

context of other methods of nomination permitted by Virginia law- [the open primary statute] does not facially burden political parties' associational rights." *Id.* at 367. The court also noted that:

> Virginia allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party. And, by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views. Thus, the "forced association" that the Supreme Court has condemned simply is not present here.

*Id.* The court held that, because Virginia had multiple options for candidate selection, Virginia's open primary statute imposed no burden on parties' associational rights and was not facially unconstitutional. *Id.* at 368. The court, however, did agree with the district court's finding that the statute was unconstitutional as applied. *Id.*

Supreme Court precedent further supports the practice that only mandatory candidate nomination schemes implicate a political party's constitutional right to free association. In *California Democratic Party v. Jones*, 530 U.S. at 567, the Court addressed the constitutionality of California election laws requiring political parties to use the blanket primary nomination process to gain access to the general election ballot.[6] *Id.* at 570. A blanket primary is one in which the ballot lists every candidate regardless of party affiliation and allows the voter to choose freely among them.

In discussing the constitutionality of California's law, the Court recognized the well-established rights of political organizations to freely join together in furtherance of common political goals, to freely identify those who constitute the organizations' membership, and to exclude from membership people who do not share in their political beliefs. *Id.* at 574. In light of these significant rights, the Court found that the blanket primary nomination format adopted by California

---

[6]Candidates could also be listed on the general election ballot as an independent candidate by obtaining signatures in accordance with the statute. However, nomination by petition did not apply to qualified political parties. *See Jones*, 530 U.S. at 570.

inhibited party associational freedoms because it "force[d] political parties to associate with - to have their nominees, and hence their positions, determined by - those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Id.* at 577.

The mandatory nature of the circumstances presented in *Jones* largely informed the Court's finding of unconstitutionality in that case. In this manner, *Jones* differs substantially from the matter currently before this court in both fact and procedure. Unlike the election laws in *Jones,* the South Carolina election laws challenged in this suit provide alternative mechanisms for political parties to access the general election ballot - political parties are free to use the convention method and, presumably, the petition method of nomination under South Carolina law. It is additionally distinguishable in that the lower court and the appellate courts reviewing California's blanket primary law evaluated the law after benefit of a trial which focused, substantially, on testimony regarding the effects of cross-over voting. There is no similar empirical evidence before the court today; Plaintiffs have only put forth their hypothetical assessment of the difficulty in attaining the vote percentage necessary for their party to use the convention nomination method. Taking into consideration the important distinctions between *Jones* and this case, the court cannot come to the same conclusion as the Supreme Court did in *Jones.*

Although not binding precendent, a recent decision from the United States District Court for the District of Idaho instructs the court's analysis of the issues presented by Plaintiffs. The Idaho Republican Party brought suit against the Idaho Secretary of State alleging that Idaho's use of an open primary system to determine nominees for the general election violated The Idaho Republican Party's First Amendment rights. *See Idaho Republican Party v. Ysursa,* No. 1:08-CV-165-BLW, 2011 WL 721633, at *1 (D. Idaho Mar. 2, 2011). Under Idaho law, political party candidates for the

general election were required to be chosen by the Idaho open primary election.  *Id*.  After a bench trial in which the district court received substantial evidence related to actual voter conduct and expert testimony concerning cross-over voting, the court concluded that the Idaho open primary statute "is unconstitutional **as applied** to the Idaho Republican Party."  *Id*. at *8 (emphasis added).

*Ysursa* is easily distinguished from the instant case.  Similar to the circumstances presented in *Jones*, Idaho's primary law was **mandatory** in nature and the court addressed the constitutional challenge as applied, not on its face.  Despite the fact that political parties were required to participate in the open primary to access the general election ballot, the *Ysursa* court found that a determination of the constitutionality of the statute could not be made without considering the application of the statute to the political parties.  It was only after an analysis of the statute in its application that the court found it unconstitutional.

Under South Carolina law, political parties may not be given the opportunity to conduct closed primaries, but neither are they forced to associate with those individuals with whom they choose not to associate.  Any party is free to elect a different method of nomination, either by convention or petition, which allows political parties to associate with only those people approved for membership in the party.[7]  Therefore, adhering to the precedent set forth in *Miller*, the court finds that South Carolina's open primary laws do not facially burden political parties' right to freedom of association.

---

[7]The State is not required to offer alternative nomination methods but may actually mandate that a single nomination method be used by all candidates and political parties.  *See Am. Party of Texas v. White*, 415 U.S. 767, 781-82 (1974) (acknowledging State's right to determine the method of nomination).  However, States remain subject to the responsibility of ensuring that the method chosen, particularly if only one method is authorized, comports with the rights protected by the Constitution.

Alternatively, Plaintiffs urge the court to find that South Carolina law already allows them to operate closed primaries. However, the court finds Plaintiffs' arguments interpreting section 7-11-20 of the South Carolina Code unpersuasive. Code section 7-11-20 provides, in relevant part, that "party conventions or party primary elections held by political parties . . . to nominate candidates for any of the offices to be filled in a general or special election **must be conducted in accordance with the provisions of this title and with party rules not in conflict with the provisions of this title** or of the Constitution and laws of this State or of the United States." *Id.* (Emphasis added). The statute clearly allows political parties to fashion party rules concerning party primaries, but those rules must be in accordance with and not in conflict with State law. The party rules which Plaintiffs wish to adopt would directly conflict with multiple provisions of Title 7 of the South Carolina Code of Laws. For example, the board of registration in each county determines the list of voters who are entitled to vote at each precinct in a primary election, *see* S.C. Code Ann. § 7-5-420, and a voter may not be removed from the list by party rules. *See* S.C. Code Ann. § 7-5-340 (providing that a qualified elector may not be removed from the official list of eligible voters except at the elector's request, upon adjudication of incompetence, death, or change in residence). Any party rule attempting to disallow a qualified elector whose name appears on the list provided to a precinct by the election commission from voting in the primary, or attempting to remove an elector's name from the list, would contradict State law. The plain language of section 7-11-20 simply does not allow parties that choose to use the primary method of nomination to operate closed primaries. *See State of South Carolina v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended

14

purpose of the statute.  The Court should give words their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.")

In an additional effort to convince the court that South Carolina's primary laws are invalid, Plaintiffs further claim that the voter qualification statute, section 7-9-20, unconstitutionally violates political parties' associational rights.  Code section 7-9-20 sets forth the general qualifications for membership in a certified party and for voting at a party primary election.  The qualifications include an age requirement, a general registration requirement, and a citizenship requirement.  In addition, the statute provides that "[t]he state convention of any political party . . . may add by party rules to the qualifications for membership in the party, organization, or association and for voting at the primary elections if the qualifications do not conflict with . . . the Constitution and laws of this State or of the United States."  S.C. Code Ann. § 7-9-20.  Plaintiffs contend that the statute regulates parties' internal processes by providing that any additional rules be added by the state convention. By designating the state convention in the statute, Plaintiffs argue that the State has limited political parties' ability to add rules by State Executive Committee or other committee of the party.

The court agrees that the statute could impact internal party processes.  However, Plaintiffs misconstrue the extent of the regulation.  Code section 7-9-20 does not proscribe how the state convention must adopt party rules to supplement those qualifications provided by the statute.  If a state convention chooses to promulgate party membership and party primary rules by designating that authority to its State Executive Committee in its party rules, nothing within section 7-9-20 prevents the state convention from doing so. Therefore, any burden imposed by the State's designation of the state convention as the authoritative body with respect to supplementing the statutory qualifications by party rules is no more than an insubstantial burden, if a burden at all.

Accordingly, South Carolina's open primary laws are not facially unconstitutional and do not violate political parties' freedom of association given the availability of other nomination methods.

## II.     Nomination by Convention

Plaintiffs also argue that section 7-11-30 of the South Carolina Code, authorizing nomination by party convention, burdens their First Amendment right to freedom of association due to the law's requirement that three-fourths of the total membership of the convention affirmatively vote to utilize the nomination method. *See id.* Plaintiffs argue that the State infringes on their rights to freedom of association because the statute impermissibly regulates parties' internal processes by dictating the vote percentage needed for a party to use the convention nomination method and by mandating that the method of nomination for certain state legislative offices be determined by the state committee.

This court recognizes that section 7-11-30 impacts a party's ability to choose the convention method of candidate nomination. However, the critical determination for the court is the nature and magnitude of the impact. In *Eu v. San Francisco County Democratic Cent. Committee,* 489 U.S. at 214, the Supreme Court reviewed a challenge to California election laws which banned primary endorsements by party governing bodies, regulated the organization and composition of official governing bodies of political parties, limited the term of office for state central committee chairs, and imposed a rotation requirement for committee chairs. In upholding the lower court's finding that the laws were unconstitutional, the Court rejected the State's contention that the burdens imposed by the regulations on internal party processes were only "minuscule." The Court found that the laws prohibiting the endorsements were egregious, "directly hamper[ed] the ability of a party to spread its message," and burdened the party's freedom of speech and freedom of association warranting a strict scrutiny analysis. *Id*. at 223–24. Additionally, the Court found that the laws establishing the

16

organizational structure of the parties violated political parties' freedom of association. *Id*. In "limit[ing] a political party's discretion in how to organize itself, conduct its affairs, and select its leaders" the State infringed upon strong and well-established associational rights requiring the highest level of scrutiny. *Id.* at 230-31.

South Carolina's convention nomination statute, on its face, does not present the significant implications of *Eu*. The voting requirement and the allocation of authority to the state committee over the nomination process of state legislative offices neither limit or abridge any party's ability to disseminate its views, nor does the statute affect how a party conducts its internal organizational affairs. Section 7-11-30 does not place any requirements on the party's candidate nomination process once the convention method is chosen. It only places limitations on how a party may first elect to participate in the convention method for nominating its candidate for the general election; the limitations merely affect the manner in which the State regulates candidate access to the general election ballot. Section 7-11-30 is substantially similar to statutes requiring a candidate to obtain a certain percentage of signatures from qualified electors to gain access to the general election ballot. Courts have upheld such statutes as constitutional. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) (noting that a State has an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot").

Accordingly, the convention nomination statute does not have any direct affect on political parties' internal processes. It only indirectly impacts parties by placing requirements on the parties' efforts to utilize the convention method as an alternative to an open primary.

## III.     Equal Protection

17

In addition to the constitutional challenge to the State election statutes on the basis of freedom of association, Plaintiffs advance equal protection challenges to the statutes discussed herein. Plaintiffs believe that the statutes hold political organizations to a different standard than other organizations, such as churches and corporate entities. Plaintiffs also allege that individual electors suffer equal protection violations due to state laws compelling some primaries to be run by the political parties and other primaries to be state-run.

Regulation of elections is necessary to ensure that they are fair, honest, and orderly. However, similarly situated candidates or parties are protected from discrimination by the Equal Protection Clause of the Constitution. In claiming an equal protection violation, a plaintiff must "demonstrate in the first instance a discrimination against them of some substance." *Am. Party of Texas*, 415 U.S. at 781. It is insufficient to show that a state provision merely makes a distinction among groups. "Classification is the essence of all legislation, and only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause of the Constitution.*"* *Clements v. Fashing*, 457 U.S. 957, 967 (1982). "'[E]venhanded restrictions that protect the integrity and reliability of the electoral process itself' are not invidious." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-90 (2008) (citing *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 788 n.9 (1966)).

In the first instance, Plaintiffs encourage the court to find that political parties are an inherently suspect class against which any discrimination must be measured by the highest level of scrutiny. Courts have generally found classifications such as race, religion, gender or alienage inherently suspect distinctions subject to strict scrutiny. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). However, this court is unfamiliar with, and Plaintiffs have

not cited, any authority categorizing political parties as an inherently suspect class. Therefore, any discrimination against political parties may be justified if it is rationally related to a legitimate state interest.

Furthermore, in this case, the court struggles to find any discrimination or violation of equal protection. The predominant discrimination claimed by Plaintiffs is that political organizations are held to a different standard than churches, corporations, and other private corporate entities because political parties are required to receive supermajority approval of their membership to select convention nomination under the law while private corporate entities may make decisions by simple majority or other vote percentage designated in corporate organizational documents. However, this claim of discrimination is without merit.

Plaintiffs presuppose that political parties and private organizations share the same classification. However, the court has not found any constitutional requirement that States treat political organizations the same as other private organizations. The mere classification of a political party as such under South Carolina law entitles political parties to participation in and access to the election process in a way that is wholly denied to other private organizations. Political parties' involvement in the election process goes beyond mere public endorsement of a candidate, which implicates parties' free speech rights and extends to the State's actual inclusion of that endorsement on the general election ballot.

While it is true that other private corporate entities have flexibility in designating their own vote percentage for making decisions which affect the entities themselves, Plaintiffs ignore that the South Carolina General Assembly has placed differing restrictions on private corporate entities depending on whether their activities affect the public. For example, public benefit or religious

corporations may be private corporate entities, but they are subject to restrictions on the sale of corporate assets which do not apply to other private corporate entities.  *See* S.C. Code Ann. 33-31-1202 (requiring notice to the Attorney General prior to the disposition of assets not in the ordinary course of business).  Such provisions are enacted to protect the public.  *See* Reporter's Comments to S.C. Code Ann. 33-31-1202.  Defendants argue that the General Assembly intended similar protection of the public through the inclusion of a specific vote percentage requirement in the convention method statute to ensure that the membership of the political party thoughtfully reflected on the effect the party's decision would have on preserving fair elections and voter participation.  The fact that the supermajority requirement is not applicable to other private corporate entities does not indicate invidious discrimination against political parties.

Undoubtedly, South Carolina law treats political parties differently than other private entities, but this treatment is not the hallmark of the type of discrimination protected by the Equal Protection Clause.  The proper inquiry is whether the challenged laws place all political parties on equal ground, and Plaintiffs have provided nothing to indicate that South Carolina's election statutes discriminate between certified political parties.  To the extent that one party is required to meet the voting requirement in the convention nomination statute, all political parties are so required.  Where one party is required to adhere to the statutes governing voter qualifications, all others share equally in the requirement.

Plaintiffs further argue that obtaining the supermajority to qualify for convention nomination may be difficult.  However, Plaintiffs acknowledged at the hearing on these motions that minor political parties in South Carolina currently use the convention method in accordance with the statute and that Plaintiffs, themselves, have used the convention method in the past under the same statute.

Therefore, the court has no basis upon which to determine that the vote requirement is impossible or impractical. Keeping in mind that this matter is before the court on a facial challenge, Plaintiffs must show that there are no set of circumstances under which the law could be validly applied or, at least, that there is a realistic possibility that the law may inhibit the rights of third parties. *See New York State Club Ass'n, Inc.*, 487 U.S. at 11. Plaintiffs have failed to make that showing. Even taking into consideration Plaintiffs' allegation concerning the complexities of obtaining the required vote as a major party, in the context of the extent of a possible infringement on Plaintiffs' constitutional rights, any burden that may be imposed on a party by the limitations contained in the convention nomination statute is only slight, at best.

Plaintiffs also argue that individual electors' rights are violated under the Equal Protection Clause because electors living in different parts of the same county are required to participate in different types of primaries.[8] Specifically, Plaintiffs contend that Code section 7-13-15 compels unequal treatment among electors based on residency because Plaintiff Mitchell, a city resident, has the opportunity to vote in a Republican run primary election while Plaintiff Haddon, a county resident, must vote in a primary election not conducted by his fellow Republicans. This argument is also a distinction without substance. The court first notes that Plaintiffs have misstated the law in making this argument. State law does not "compel the Greenville County Republican Party" to conduct and fund municipal primary elections in Greenville County. Code section 7-13-15(a)(1)

_____

[8]Plaintiffs argue that the court must grant summary judgment on their challenge to the State election statute because they have submitted uncontroverted affidavits regarding the Greenville County Republican Party's conduct of municipal primaries. However, summary judgment is only appropriate where there is no dispute of material fact **and** the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court finds that Plaintiffs have failed to demonstrate their entitlement to judgment as a matter of law on this issue.

only provides that neither the State Election Commission nor the county election commissions are required to conduct municipal elections. State law actually allows municipalities to select one of three nonpartisan methods of nomination or allow partisan nominations by primary, convention, or petition in accordance with State law.  *See* S.C. Code Ann. § 5-15-60.  If the Greenville County Republican Party feels compelled to run and pay for its party's municipal primary, it is because it chooses to do so or is required to do so by action of the City of Greenville,[9] and not because there is a State election law mandating such action.[10]  As discussed above, political parties are not required to nominate candidates by primary; that is true at the state, county, and municipal levels of government. There is no distinction between electors based on where they live that is imposed upon the elector by the State and, even if a distinction did exist as Plaintiffs contend, it would not rise to the level of the invidious, arbitrary, or irrational conduct typically found to offend the Equal Protection Clause.

## IV.    State Interests

Because the court finds that any burden imposed upon political parties by the challenged statutes to be slight, at the most, the State must provide only important regulatory interests to justify reasonable, non-discriminatory restrictions.  Defendants have offered several state interests in justification of the challenged statutes including protecting and preserving the integrity of the

---

[9]Under State law, municipalities maintain election commissions of their own that could, theoretically, be used to conduct primary elections. *See* S.C. Code Ann. § 5-15-90.  If, as a practical matter, municipal ordinance or other authority designates the coordination of party primaries to the parties, it is not relevant to this court's analysis of the constitutionality of the State statutes.

[10]Plaintiffs rely on this misstatement of South Carolina law for their argument that political parties suffer equal protection violations as a result of being compelled to conduct primaries on the municipal level while State-funded primaries are provided at other governmental levels. Accordingly, this argument fails because of Plaintiffs' misconstruction of the law.

nominating process, promoting fairness, increasing voter participation, and ensuring administrative efficiency.[11]

States have a significant interest in regulating elections in a manner that preserves the integrity of the electoral process and ensures that elections are fair and honest.  *See Eu*, 489 U.S. at 231; *Rosario v. Rockefeller*, 410 U.S. 752, 761(1973); *Storer v. Brown*, 415 U.S. 724, 730 (1974). This is particularly true where "the State gives the party a role in the election process . . . by giving certain parties the right to have their candidates appear with party endorsement on the general election ballot."  *New York State Bd. of Elections v. Lopez Torres,* 552 U.S. 196, 203 (2008); *see also Am. Party of Texas*, 415 U.S. at 779–80 (upholding the requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions).

Additionally, States have an important interest in promoting voter participation in the electoral process.   "The right to vote freely for the candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  States must seriously undertake their obligation to protect the rights of individual voters to cast a meaningful ballot.   *Id.* (citations omitted).

---

[11]Defendants offer five other state interests - preventing voter confusion; protecting the public from frivolous and fraudulent candidates; affording voters greater choice; protecting the privacy of voters; and ensuring the candidate selection process is open to public scrutiny - without elaborating on the implication of those interests to the statutes at issue in this case.  The court need not discuss these interests in detail given the court's analysis of the three state interests most strongly relied upon by Defendants.

Finally, courts have found that States maintain a legitimate interest in ensuring administrative efficiency in the election process. *See Burdick*, 504 U.S. at 438–39 (discussing the State's limitations on write-in voting); *Rosario*, 410 U.S. at 760 (explaining that a State may be justified in imposing some reasonable cutoff point for registration or party enrollment prior to election day). The orderly and effective administration of elections protects the stability of the political system, and States may use reasonable restrictions to accomplish this goal. *See Storer*, 415 U.S. at 736 (acknowledging California's restrictions on independent candidacies further the State's interest in a stable political system).

In enacting elections laws, States must engage in a tough balancing act that culminates in a procedure that protects the rights of political organizations, the rights of candidates, and the rights of voters. It is a complicated task that may not provide everyone with the options they would like, but one that must result in providing all with the rights to which they are entitled. South Carolina's election statutes provide multiple methods for political parties to nominate candidates to the general election ballot. Defendants argue that the State prefers to have candidates nominated to the general election ballot by open primary because it is, in the State's view, the most administratively convenient manner to provide political parties with broad forums in which to reach voters who share their ideology while preserving the integrity of the overall electoral process and encouraging voter participation. Defendants also contend that the same reasons motivate the State's requirement that political parties attain three-fourths vote by convention to choose the convention nomination method. Defendants' arguments are persuasive. Accordingly, the court finds the challenged statutes are adequately justified by legitimate state interests.

CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [Doc. # 28] is **DENIED** and Defendants' Motion for Summary Judgment [Doc. # 30] is **GRANTED**. Defendant The State of South Carolina's Motion to Dismiss [Doc. # 29] is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

March 30, 2011
Greenville, South Carolina